**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JESSICA HINTON; TIFFANY TOTH GRAY;
URSULA MAYES a/k/a URSULA SANCHEZ;
CIELO JEAN GIBSON; and EVA PEPAJ,

     *Plaintiffs*,

v.

THE GREATEST BAR, LLC and PETER
LUCIDO,

     *Defendant*.

Civil Action No.:

Plaintiffs JESSICA HINTON; TIFFANY TOTH GRAY; URSULA MAYES a/k/a

URSULA SANCHEZ; CIELO JEAN GIBSON; EVA PEPAJ; and TIFFANY TOTH GRAY;

(collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint

("Complaint") against defendants THE GREATEST BAR, LLC d/b/a THE GREATEST BAR

and PETER LUCIDO (collectively "Defendant")  respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's

misappropriation, alteration, and unauthorized publication and use in advertising of images of

Plaintiffs, each of whom are well-known professional models, to promote their nightclub,

Greatest Bar located in Boston, Massachusetts ("Greatest Bar" or the "Club").

2.     As detailed below, Defendant's misappropriation and unauthorized use of

Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of

section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading

representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendant's appropriation of their likeness; c) violation of Massachusetts's Unfair Trade Practices Act (M.G.L.A. 93A § 11); d) violation of Massachusetts's right of publicity statute (M.G.L.A. 214 § 3A;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant THE GREATEST BAR, LLC is a corporation formed under the laws of the state of Massachusetts, with its principal place of business located at 262 Friend Street Boston, Massachusetts, 02114.   THE GREATEST BAR, LLC operates Greatest Bar, which is located at 262 Friend Street Boston, Massachusetts, 02114.

7.      Venue is proper in the United States District Court for the District of Massachusetts because Boston, Massachusetts is Defendant's principal place of business.

8.      Primarily and substantially the alleged causes of action arose and accrued in Boston, Massachusetts and the center of gravity for primarily and substantially all relevant

events alleged in this complaint is predominately located in Boston, Massachusetts.

## PARTIES

*Plaintiffs*

9.      Plaintiff JESSICA 'JESSA' HINTON ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

10.     Plaintiff TIFFANY TOTH GRAY ("Gray") is a well-known professional model, and a resident of Orange County, California.

11.     Plaintiff URSULA MAYES a/k/a URSULA SANCHEZ ("Mayes") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff CIELO JEAN 'CJ' GIBSON ("Gibson") is a well-known professional model, and a resident of Hillsborough County, Florida.

13.     Plaintiff EVA PEPAJ ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

14.     According to publicly available records, defendant THE GREATEST BAR, LLC is formed under the laws of the state of Pennsylvania.  During times relevant to this action, THE GREATEST BAR, LLC operated Greatest Bar in Boston, Massachusetts.

15.     According to publicly available records, and upon information and belief, PETER LUCIDO, in his capacity as principal, owner and/or CEO of THE GREATEST BAR, LLC maintained operational control over Greatest Bar, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

16.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and

individuals for the purpose of advertising products and services.

17.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

18.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Greatest Bar.

19.     In the case of every Plaintiff, such appearance was false.

20.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

21.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

22.     Hinton was first introduced to the modeling industry at age fourteen when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and guest appeared on Baywatch and 7th Heaven by the age of sixteen. At the age of eighteen, she began working runway shows and doing print campaigns. In 2010, Ms. Hinton became the face of the Palms Hotel & Casino's 2010 ad campaign. She then expanded to TV

personality roles having hosted for Victory Poker, and as an interview personality for the Top Rank Boxing interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Ms. Hinton also gained spokes model roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, Protein World and ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images appeared on billboards, magazines, posters, and multiple forms of electronic media. Ms. Hinton has been a featured front cover model gaining attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle & Fitness. She was recently named Creative Director for MAJR Media and was given part ownership for her role with the company. Ms. Hinton has also earned an elite status as a social media celebrity crossing well over the 1.1 million follower benchmark on Instagram, over 2.8 million followers on Facebook, and over 251 thousand followers on Twitter.

23.     That we know of, Hinton is depicted in the photos in Exhibit "A" to promote Greatest Bar on its Facebook and Twitter pages. These Images were intentionally altered to make it appear that Hinton was either working at Greatest Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

24.     Hinton has never been employed at Greatest Bar, has never been hired to endorse Greatest Bar, has never been otherwise associated or affiliated with Greatest Bar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

25.     Gray is an extremely successful model that takes great pride in holding the

prestigious title of a Playboy Playmate. Ms. Toth was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen, and Maxim, but has also posed for various catalogs. Ms. Toth has over 3.8 million Facebook followers, over 1.3 million Instagram followers, and over 275 thousand Twitter followers.

26.     That we know of, Gray is depicted in the photos in Exhibit "B" to promote Greatest Bar on its Facebook, Instagram, and website pages. These Images were intentionally altered to make it appear that Gray was either working at Greatest Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

27.     Gray has never been employed at Greatest Bar, has never been hired to endorse Greatest Bar, has never been otherwise associated or affiliated with Greatest Bar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.     Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in Maxim magazine. She is well known as a "suitcase model #5" from the hit game show Deal or No Deal. Ms. Mayes has appeared on Minute To Win It, The Tonight Show, and The Jay Leno Show. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, Vogue, Elle, In Style, Cosmopolitan, and Marie Claire, to name a few. Ms. Mayes is currently a cover model and a star of the game Juiced 2: Hot Import Nights. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

29.     That we know of, Mayes is depicted in the photos in Exhibit "C" to promote Greatest Bar on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Mayes was either working at Greatest Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

30.     Mayes has never been employed at Greatest Bar, has never been hired to endorse Greatest Bar, has never been otherwise associated or affiliated with Greatest Bar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.     Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team, and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

32.     That we know of, Gibson is depicted in the photos in Exhibit "D" to promote Greatest Bar on its Facebook page. These Images were intentionally altered to make it appear that Gibson was either working at Greatest Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

33.     Gibson has never been employed at Greatest Bar, has never been hired to endorse Greatest Bar, has never been otherwise associated or affiliated with Greatest Bar, has received no

remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign

35.     That we know of, Pepaj is depicted in the photos in Exhibit "E" to promote Greatest Bar on its Facebook, website, and Eventbrite pages. These Image were intentionally altered to make it appear that Pepaj was either working at Greatest Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

36.     Pepaj has never been employed at Greatest Bar, has never been hired to endorse Greatest Bar, has never been otherwise associated or affiliated with Greatest Bar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business***

37.     Upon information and belief, Defendants operated, during the relevant time period, Greatest Bar, where they engaged in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

38.     Upon information and belief, and in furtherance of its promotion their promotion of Greatest Bar, Defendants own, operate and control Greatest Bar's social media accounts, including its Facebook, Twitter, and Instagram accounts.

39.     Defendants used Greatest Bar's Facebook, Twitter, and Instagram accounts to promote Greatest Bar, and to attract patrons thereto.

40.     Defendants did this for their own commercial and financial benefit.

41.     Defendant has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked at Greatest Bar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

42.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Greatest Bar to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

43.     As Defendant was at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Greatest Bar and at no point have any of the Plaintiffs ever endorsed Greatest Bar, or otherwise been affiliated or associated with Greatest Bar.

44.     All of Defendant's activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

45.     As such, Plaintiffs have never received any benefit from Defendant's use of their Images.

***Standard Business Practices in the Modeling Industry***

46.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

47.     The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following

factors: a) the reputation, earning capacity, experience, and demand of that particular model; b)

the location where the photo shoot takes place, and the length thereof; c) where and how the

images are going to be used by the client (*e.g.*, company website, social media, television

commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the

"term") the rights to use the photos will be assigned.  Most licenses to use a model's image are

for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

48.     As detailed above, Defendants knowingly, and without the prior consent of any of

the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in

order to promote Greatest Bar by and through various marketing and promotional mediums

including, without limitation, Greatest Bar's website, Twitter, Facebook, and Instagram.

49.     Defendants showcased Plaintiffs' Images on Greatest Bar's social media pages to

create the false impression that Plaintiffs worked at Greatest Bar, endorsed, promoted or

sponsored same, or were otherwise associated or affiliated with same.

50.     Defendants did so to attract clientele to Greatest Bar, promote Greatest Bar, and

thereby generate revenue for Defendants.

51.     Defendant was aware that, by using Plaintiffs' Images, they were violating

Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to

potential customers that Plaintiffs worked at and/or endorsed Greatest Bar.

52.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed

relating to the commercialization of their Images.

53.     In addition, Plaintiffs allege that any improper or unauthorized use of their Images

substantially injures their careers.

54.     This is especially so insofar as each of Plaintiffs' Images have been associated with a nightclub, and the implication of Defendant's use of Plaintiffs' Images is that they are , endorse a nightclub, or are otherwise associated or affiliated with a nightclub.

55.     At no point were any of the Plaintiffs ever affiliated with Greatest Bar, or Defendants.

56.     Each of Plaintiffs' Images was used without her consent.

57.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

58.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

59.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Greatest Bar website, Twitter, Facebook, or Instagram accounts.

60.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

61.     Upon information and belief, Defendant has taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

62.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

63.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

64.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Greatest Bar, or agreed to appear in Greatest Bar's advertisements.

65.     Given the false and misleading nature of the advertisements, they had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

66.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Greatest Bar.

67.     Insofar as Defendant's published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

68.     Despite the fact that Defendant was at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

69.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

70.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

71.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

72.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

73.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

74.     Defendants used Plaintiffs Images in order, *inter alia*, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Greatest Bar, or worked at, sponsored, or approved of Greatest Bar's goods, services or commercial activities.

75.     This was done to promote and attract clientele to Greatest Bar, and thereby generate revenue for the Defendants.

76.     Thus, this was done in furtherance of Defendant's commercial benefit.

77.     Despite the fact that Defendant was at all times aware that the Plaintiffs were neither affiliated, connected or associated with Greatest Bar, nor worked at, sponsored, or approved of Greatest Bar's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Greatest Bar.

78.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

79.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Club, and the goods and services provided by the Club.

80.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an

amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
### (Common Law Right of Privacy)

81.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

82.     As set forth hereon, Defendant has violated each Plaintiff's common law right to privacy under Massachusetts law.

83.     Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

84.      Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Greatest Bar's website or related social media accounts as part of Defendant's advertising campaign.

85.     At all relevant times, Greatest Bar's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

86.     Greatest Bar's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

87.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

88.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

89.     Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

90.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Greatest Bar.

91.     At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

92.     Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

93.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

94.     Defendant's actions are an unreasonable and/or serious interference with each Plaintiff's right of privacy.

95.     No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

**FOURTH CAUSE OF ACTION**
**(Violation of *M.G.L. c. 214 § 1B*: Right of Privacy)**

96.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

97.     Defendant has violated each Plaintiff's statutory right to privacy under *M.G.L. c. 214, § 1B*.

98.     Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

99.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Greatest Bar's website or related social media accounts as part of Defendant's advertising campaign.

100.    At all relevant times, Greatest Bar's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

101.    Greatest Bar's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

102.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

103.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

104.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

105.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Greatest Bar.

106.    At no point did any Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

107.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

108.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

109.    Defendant's actions are an unreasonable, substantial and/or serious interference with each Plaintiff's right of privacy.

110.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 214 § 3A*:  Unauthorized Use of Individual's Name, Portrait, or Picture)

111.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

112.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

113.    Within Massachusetts, Defendant's used each Plaintiff's image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their nightclub.

114.    No Plaintiff ever gave Defendant's written consent, authorization, or otherwise granted permission to Defendant's to use her image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

115.    Defendant was at all times aware that no Plaintiff ever authorized Defendants to use her image in advertising.

116.    As such, Defendant's misappropriation and publication of each Plaintiff's image in advertising was knowing and willful.

- 17 -

117.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

118.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

119.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

120.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

121.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

122.    In addition to the actual damages suffered by Plaintiffs based on Defendant's violation of this statute and given Defendant's willful and knowing misappropriation and publication of each Plaintiff's image, Plaintiffs are entitled to treble damages.

## <u>SIXTH CAUSE OF ACTION</u>
### (Common Law Right of Publicity)

123.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

124.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

125.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

126.    As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Blush advertising.

127.    Defendants did so without any Plaintiff's consent, written or otherwise.

128.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

129.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

130.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

131.    At no point did Defendants ever compensate Plaintiffs for its use of their Images.

132.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

133.    In addition, because Defendant's actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Violation of *M.G.L. c. 93A § 11*: Unfair Trade Practices)

134.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

135.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or

commerce, such that they are considered a "business" under *M.G.L. c. 93A.*

136.   As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs were either working at the Club, endorsed the Club, or were otherwise associated or affiliated with the Club.

137.   Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

138.   Defendants actions occurred primarily and substantially within Massachusetts.

139.   Defendant was at all times aware that no Plaintiff was working at, had contracted to endorse or promote, or was otherwise associated or affiliated with the Club, but nevertheless published each Plaintiff's image.

140.   This was done for Defendant's commercial benefit, and to the detriment of Plaintiffs.

141.   Plaintiffs suffered actual money damages by reason of Defendant's unfair and deceptive advertisements by, *inter alia*, being deprived those monies Defendants should have paid them for their appearance in Defendant's advertisements.

142.   In addition to actual damages, and in light of Defendant's knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, as provided for under this statute.

143.    In addition to actual damages, to Defendant's unfair and deceptive acts may have the effect of causing such loss to each Plaintiff's business that Plaintiffs are entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

144.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

145.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

146.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

147.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

148.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

149.    Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

150.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Illinois law, were not violated.  Defendants breached their duty

of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

151.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

152.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Conversion)

154.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

155.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

156.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

157.    As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

158.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

159.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

160.    Defendant's publication was for the purpose of creating a false impression to the

general public that Plaintiffs were either  working at the Clubs, or endorsed the Clubs.

161.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

162.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

163.    Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

164.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

165.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Quantum Meruit)

166.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

167.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

168.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

169.    Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not

compensated Plaintiffs.

170.    Plaintiff is therefore entitled to reasonable compensation for the Clubs'
unauthorized use of their Images.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against
Defendants as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first
through eleventh causes of action;

(b)  For an order permanently enjoining Defendants from using Plaintiffs' Images to
promote the Club;

(c)  For punitive and/or treble damages, in an amount to be determined at trial, based on
Defendant's knowing and willful misappropriation of Plaintiffs' publicity and property rights and
deceptive trade practices;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action
pursuant to the Lanham Act, 15 U.S.C.§ 1117 and Massachusetts law, including but not limited
to the statutory right to privacy; statutory unauthorized use of name, portrait or picture; and the
*M.G.L. c. 93 A* unfair and deceptive trade practices act; and,

(e)  For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

PLAINTIFFS, JESSICA 'JESSA' HINTON;
TIFFANY TOTH GRAY; URSULA MAYES
a/k/a URSULA SANCHEZ; CIELO JEAN
'CJ' GIBSON; and EVA PEPAJ,

By their Attorneys,

/s/ Paul Sullivan

Paul V. Sullivan, BBO# 634466
Sullivan Law Offices, PC
86 Weybosset Street, Suite 400
Providence, RI  02903
Tel: (401) 861-9900
Fax: (401) 861-9977
psullivan@psullivanlaw.com

*and*


John V. Golaszewski
The Casas Law Firm, PC
1740 Broadway, 15th Floor
New York, New York
Tel: (646) 872-3178
Fax: (855).220.9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*

Dated:  June 25, 2020